United States Court of Appeals,

Eleventh Circuit.

Nos. 95-8244, 97-8636.

Wilburn DOBBS, Petitioner-Appellant,

v.

Tony TURPIN, Warden, Georgia Diagnostic and Classification Prison, Respondent-Appellee.

Wilburn Dobbs, Petitioner-Appellee,

v.

Tony Turpin, Warden, Georgia Diagnostic and Classification Prison, Respondent-Appellant.

June 9, 1998.

Appeals from the United States District Court for the Northern District of Georgia. (No. 4:80-CV-247), Harold L. Murphy, Judge.

Before HATCHETT, Chief Judge, TJOFLAT and BIRCH, Circuit Judges.

HATCHETT, Chief Judge:

In this capital case, we (1) affirm the district court's finding that Wilburn Dobbs received ineffective assistance of counsel during the sentencing phase of his trial, (2) grant the petition for writ of habeas corpus and (3) remand the case for resentencing.

I. BACKGROUND

On May 22, 1974, a jury in the Superior Court of Walker County, Georgia, convicted Dobbs on two counts of aggravated assault, two counts of armed robbery and one count of murder. The convictions arose out of an armed robbery at a convenience store in Chickagmauga, Georgia, on December 14, 1973, and Dobbs's murder of the store's owner, Roy Sizemore. The state trial court held Dobbs's sentencing hearing several hours after the jury rendered its guilty verdicts. During the hearing, Dobbs's lawyer, J. Donald Bennett, failed to present any mitigating evidence on Dobbs's

behalf, and during his closing argument read extensively from Justice Brennan's concurrence in *Furman v. Georgia,* 408 U.S. 238, 286-90, 92 S.Ct. 2726, 2750-53, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring). The state court sentenced Dobbs to death on the murder conviction. The Georgia Supreme Court affirmed Dobbs's convictions and the death sentence. *See Dobbs v. State,* 236 Ga. 427, 224 S.E.2d 3, 4-5 (1976), *cert. denied,* 430 U.S. 975, 97 S.Ct. 1667, 52 L.Ed.2d 370 (1977).[1]

In December 1980, Dobbs filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Georgia. The district court granted relief from the death sentence, ruling that the state superior court's instructions regarding the function of mitigating circumstances were constitutionally deficient. The district court, however, denied relief for alleged constitutional errors in the guilt phase of the trial, including Dobbs's ineffective assistance of counsel issue. The district court also reserved ruling on six unrelated sentencing phase issues.

---

[1]The Georgia Supreme Court's opinion on direct review contains a detailed recitation of the evidence presented at Dobbs's trial. *See Dobbs v. State,* 236 Ga. 427, 224 S.E.2d 3 (1976), *cert. denied,* 430 U.S. 975, 97 S.Ct. 1667, 52 L.Ed.2d 370 (1977). After his conviction, Dobbs filed numerous petitions in the Georgia state court system and the United States Supreme Court throughout the late 1970s, and the courts denied all of the petitions. In 1977, Dobbs petitioned the superior court for a writ of habeas corpus, and the superior court denied relief. *See Dobbs v. Hooper,* No. 77-185 (Tattnall Super. Ct., Oct. 9, 1979). Dobbs then filed an application for probable cause to appeal the superior court ruling, and the Georgia Supreme Court denied the application. The United States Supreme Court denied Dobbs's petition for writ of certiorari. *See Dobbs v. Hopper,* 447 U.S. 930, 100 S.Ct. 3029, 65 L.Ed.2d 1125 (1980). While Dobbs's state habeas corpus petition was pending, he filed an extraordinary motion for new trial, which the superior court denied. *See Georgia v. Dobbs,* No. 8403 (Walker Super. Ct., Aug. 13, 1979). The Georgia Supreme Court affirmed this decision, and the United States Supreme Court denied certiorari. *See Dobbs v. State,* 245 Ga. 208, 264 S.E.2d 18(Ga.), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980).

Because of an unavailability of the sentencing transcript, the district court relied on Bennett's testimony regarding the ineffective assistance of counsel issue and the content of his closing argument. Bennett testified at Dobbs's federal habeas corpus proceeding in 1982 that (1) he assumed that he argued that the slaying was impulsive; and (2) he assumed that he argued that "it was not within the jury's province to impose the death penalty." Based on this testimony, the district court found that Bennett had rendered effective assistance. *See Dobbs v. Zant,* No. C80-247 (N.D.Ga. Jan. 13, 1984).

On appeal, this court reversed the district court's grant of relief and remanded the case to the district court for consideration of the six additional sentencing phase claims. This court also relied on Bennett's testimony concerning his closing argument. *See Dobbs v. Kemp,* 790 F.2d 1499, 1514 n. 15 (11th Cir.1986), *reh'g denied with modifications,* 809 F.2d 750 (11th Cir.1987), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987). On remand, the district court denied relief on the reserved issues. *See Dobbs v. Zant,* 720 F.Supp. 1566 (N.D.Ga.1989).

In October 1989, during a search of the superior court reporter's storage buildings, Dobbs's appellate lawyers discovered stenographic notes of the closing arguments from Dobbs's sentencing hearing. Dobbs then filed a(1) motion to expand the record, (2) motion for leave to amend his petition and (3) motion to reopen and reconsider pursuant to Federal Rules of Civil Procedure 59 and 60. The district court denied these motions, but ordered the discovered notes transcribed and made part of the record. *See Dobbs v. Zant,* No. 4:80-247-HLM at 23-26 (N.D.Ga. Mar. 6, 1990). Upon review of the district court's denial of Dobbs's relief, this court held that the law of the case doctrine precluded revisiting Dobbs's ineffective assistance of counsel claim and affirmed the district court's denial of Dobbs's petition for a writ of habeas corpus. *See Dobbs v. Zant,* 963 F.2d 1403,

1409, 1412 (11th Cir.1991). Finding that this court erred in refusing to consider the newly-discovered sentencing transcript, the Supreme Court reversed. *See Dobbs v. Zant,* 506 U.S. 357, 359, 113 S.Ct. 835, 836, 122 L.Ed.2d 103 (1993).

On remand, the district court held that the new evidence found in the transcript did not warrant a reconsideration of its prior factual findings regarding Dobbs's ineffective assistance claim. *See Dobbs v. Zant,* No. 4:80-CV-247-HLM (N.D.Ga. July 29, 1994). This court again reversed and remanded, directing the district court "to conduct de novo hearings on all issues regarding ineffective assistance of counsel in the sentencing phase of this case." *Dobbs v. Thomas,* 74 F.3d 239 (11th Cir.1996). This court further instructed the district court to "make written findings of fact and conclusions of law" at the conclusion of the hearings. *Dobbs,* 74 F.3d at 239.

On remand, the district court conducted evidentiary hearings on the issue of whether Bennett rendered ineffective assistance at sentencing, and found that: (1) Bennett's failure to investigate Dobbs's background, including the circumstances of his childhood, was not reasonable and was "outside the wide range of professionally competent assistance" that the Sixth Amendment demands; (2) Bennett did not make an informed or reasonable tactical decision to exclude mitigating evidence of Dobbs's background and upbringing; (3) Bennett's sentencing argument likely minimized the jury's sense of responsibility for determining the appropriateness of death, because he argued that the Supreme Court would find Georgia's death penalty statute unconstitutional, and because it led the jurors to believe that a death sentence would not result in Dobbs's execution; (4) Bennett's sentencing argument was inadequate because he failed to address the particularized nature of Dobbs's crime and the particularized nature of Dobbs's background; (5) Bennett's sentencing argument was nothing more than a lecture, excerpted from Justice Brennan's concurring opinion in

4

*Furman v. Georgia;* (6) Bennett never asked the jury to have mercy on Dobbs, to spare Dobbs's life, or to sentence Dobbs to life imprisonment; and (7) Bennett's failure to investigate and present mitigating evidence prejudiced Dobbs. The district court concluded that Dobbs was denied effective assistance of counsel, that Dobbs's writ of habeas corpus as to his death sentence should be granted and that Dobbs should be granted a new sentencing hearing. *See Dobbs v. Thomas,* No. 4:80-cv-HLM (N.D.Ga. May 19, 1997).[2]

## II. ISSUE

The sole issue we discuss is whether Dobbs received effective assistance of counsel.[3]

## III. DISCUSSION

An ineffective assistance of counsel claim is a mixed question of law and fact, subject to *de novo* review. *See Waldrop v. Jones,* 77 F.3d 1308, 1312 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 247, 136 L.Ed.2d 175 (1996). The purpose of a sentencing hearing is to provide the jury with the information necessary for it to render an "individualized sentencing determination ... [based upon] the character and record of the individualized offender and the circumstances of the particular offense." *Penry v. Lynaugh,* 492 U.S. 302, 316, 109 S.Ct. 2934, 2945, 106 L.Ed.2d 256 (1989)

---

[2]The state of Georgia filed an appeal from this order (No. 97-8636). We consolidated the appeals.

[3]Warden Tony Turpin raises the following additional issues: (1) that the district court erred in expanding the record to include evidence not related to the sentencing transcript; (2) that Dobbs has failed to establish any cause or prejudice or any basis to excuse his failure to present to the state habeas corpus court or to the magistrate judge the sentencing transcript evidence; and (3) that the district court made clearly erroneous factual findings, *i.e.,* ignoring Bennett's testimony at a previous hearing and instead relying on the sentencing transcript, finding that it was possible that Dobbs did not cooperate with Bennett because he perceived Bennett to be racially biased and finding that Dobbs's mother's testimony was more credible than Bennett's. We find no merit in any of these issues and affirm the district court's findings without discussion. *See* 11th Cir. R. 36-1.

(citing *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976));

*see also Armstrong v. Dugger,* 833 F.2d 1430, 1433 (11th Cir.1987) ("The major requirement of the penalty phase of a trial is that the sentence be individualized by focusing on the particularized characteristics of the individual.").

The Supreme Court enunciated a two-prong test for analyzing an ineffective assistance of counsel claim in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). According to *Strickland,*

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. We review the district court's findings under each of the *Strickland* prongs.

A. Performance

1. Failure to investigate

The district court found that Bennett's performance was deficient in that he failed to conduct a reasonable investigation into Dobbs's background for purposes of discovering and presenting mitigating evidence. A sentencing jury should "not be precluded from considering *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978).

Bennett testified at the state habeas corpus proceeding that Dobbs gave him the impression that he "did not want to put up any evidence in mitigation." Bennett could only recall a few people

6

he may have talked to concerning Dobbs's sentencing, despite his familiarity with people from Dobbs's hometown. The district court also found that Bennett did not discuss any aspect of the sentencing phase with Dobbs's mother, including the circumstances of Dobbs's upbringing, his family background and whether she knew the names of any witnesses who might present mitigating evidence on Dobbs's behalf. At the sentencing hearing, the state introduced evidence of Dobbs's prior convictions for shoplifting, forgery and escape. Bennett, however, presented no mitigating evidence on Dobbs's behalf.

Under *Strickland,* Dobbs must show that Bennett's "acts or omissions" were not "the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Dobbs contends that Bennett's failure to conduct an investigation of his background and resulting failure to present mitigating evidence at the sentencing hearing did not constitute reasonable professional judgment. This circuit has held that, in preparing for a death penalty case, "a[n] attorney has a duty to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating evidence." *Porter v. Singletary,* 14 F.3d 554, 557 (11th Cir.) (citing *Thompson v. Wainwright,* 787 F.2d 1447, 1450 (11th Cir.1986), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987)), *cert. denied,* 513 U.S. 1009, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994). "The failure to do so may render counsel's assistance ineffective." *Baxter v. Thomas,* 45 F.3d 1501, 1513 (11th Cir.) (quotations and citations omitted), *cert. denied,* 516 U.S. 946, 116 S.Ct. 385, 133 L.Ed.2d 307 (1995).

This circuit also recognizes that "under some circumstances an attorney may make a strategic choice not to conduct a particular investigation." *Armstrong,* 833 F.2d at 1432-33 (citations omitted). "In any ineffectiveness case, a particular decision not to investigate must be directly

assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. A lawyer's failure to pursue a particular investigation may be reasonable "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful...." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. In this circuit, "counsel's decision not to further investigate and develop mitigating evidence must be reasonable and fall within the range of professionally competent assistance." *Jackson v. Herring,* 42 F.3d 1350, 1366 (11th Cir.), *cert. dismissed,* 515 U.S. 1189, 116 S.Ct. 38, 132 L.Ed.2d 919 (1995).

After reviewing the record, the district court found that had Bennett investigated, he could have discovered mitigating evidence in Dobbs's background. We hold that the district court's factual findings were not clearly erroneous. *Porter,* 14 F.3d at 558. Bennett testified that he was familiar with many of the people in Dobbs's community, yet he did not interview any potential witnesses. The district court found that witnesses could have testified regarding Dobbs's unfortunate childhood, including testimony that his mother would often not allow him to stay in the same house with her, and when she allowed him to stay with her, she ran a brothel where she exposed him to sexual promiscuity, alcohol and violence.

Bennett advanced four justifications for failing to investigate Dobbs's background and failing to present mitigating evidence at sentencing: (1) he was concerned that if he introduced testimony showing that Dobbs "was a pretty good child," that the prosecutor on cross examination would impeach him with his criminal record as an adult; (2) he believed that the spectators at trial, whom Dobbs identified as potential witnesses, expressed a desire not to testify; (3) he did not believe that mitigating evidence, which could have shown that Dobbs "was a good child," was admissible; and

8

(4) he believed that mitigating evidence could only be admitted to mitigate the crime, and could not include evidence concerning Dobbs's background to mitigate the sentence.

Bennett's justifications are unavailing. This court has held that "[t]o fail to do any investigation because of the mistaken notion that mitigating evidence is inappropriate is indisputably below reasonable professional norms." *Horton v. Zant,* 941 F.2d 1449, 1462 (11th Cir.1991), *cert. denied,* 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992). In addition, this court has found that "strategic" decisions based on a misunderstanding of the law are entitled to less deference. *See Horton,* 941 F.2d at 1461 n. 30. Bennett's belief that mitigating evidence of Dobbs's childhood was inadmissible and that mitigating evidence could only be admitted to mitigate the crime, as opposed to the sentence, is unreasonable.

As for Bennett's other contention that introducing mitigating evidence would "open the door" to impeachment on cross examination, this court has permitted lawyers to make strategic decisions limiting certain types of mitigating evidence. *See, e.g., Smith v. Dugger,* 840 F.2d 787, 795 (11th Cir.1988) (finding that lawyer who, after an exhaustive background search, decided not to present mitigating evidence at a sentencing hearing based on a strategic decision was not ineffective), *cert. denied,* 494 U.S. 1047, 110 S.Ct. 1511, 108 L.Ed.2d 647 (1990). These strategic decisions, however, "must flow from an informed decision." *Harris v. Dugger,* 874 F.2d 756, 763 (11th Cir.), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989). This circuit "rejects the notion that a "strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Baxter,* 45 F.3d at 1514 (citing *Horton,* 941 F.2d at 1462). With respect to Bennett's claim that Dobbs stated that he "did not want to put up any evidence in mitigation," this court has held that lawyers may not "blindly follow" such commands.

9

Although the decision whether to use mitigating evidence is for the client, this court has stated, "the lawyer first must evaluate potential avenues and advise the client of those offering possible merit." *Thompson,* 787 F.2d at 1451. Therefore, Dobbs has shown that Bennett's failure to conduct a reasonable background investigation, and his failure to present mitigating evidence at sentencing, satisfies *Strickland* 's performance prong because his representation fell below professionally competent standards.

## 2. Closing Argument

The district court also found Bennett's closing argument to be deficient for several reasons: (1) he told the jury that the Supreme Court had struck down Georgia's previous death penalty statute and would likely do the same with the present version; (2) he told the jury that he believed no executions would occur; (3) he minimized the jury's sense of responsibility; (4) he did not describe the particularized nature of Dobbs's crime, including whether the crime was "impulsive"; (5) he failed to ask the jury to have mercy on Dobbs; and (6) he read verbatim from Justice Brennan's concurring opinion in *Furman v. Georgia* as his closing argument.

This court has found that a sentencing argument can be harmful when the argument "would have been likely misunderstood by the jurors as meaning that their judgment call on the appropriateness of a death sentence did not really matter." *Mann v. Dugger,* 844 F.2d 1446, 1457 (11th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989). Bennett argued at sentencing that "there ha[d] been more or less a moratorium as far as death sentences are concerned," that Georgia had not executed anyone in more than seven years and that he believed that the Supreme Court would attack Georgia's then recently-enacted death penalty statute. We agree

10

with the district court that Bennett's comments likely minimized the jury's responsibility for determining the appropriateness of the death penalty.

Bennett's closing argument also failed to focus the sentencing jury's attention on "the character and record of the individualized offender and the circumstances of the particular offense...." *Penry,* 492 U.S. at 316, 109 S.Ct. at 2945-46 (citing *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991); *see also Armstrong,* 833 F.2d at 1433 ("[Petitioner's] trial counsel failed to provide the jury with the information needed to properly focus on the particularized characteristics of this petitioner."). Bennett could have argued, for instance, that Dobbs's shooting of Roy Sizemore was impulsive, as opposed to deliberate. The failure to focus the jury's attention on these types of particularized circumstances demonstrates deficient performance. *See, e.g., Magill v. Dugger,* 824 F.2d 879, 889 (11th Cir.1987) ("Counsel's ... closing arguments did nothing to raise a reasonable doubt in the jurors' minds that the killing was impulsive.... Lingering doubts as to whether the murder was premeditated can be an important factor when the jurors consider whether to recommend the death penalty."). Also, Bennett never asked the jury to have mercy on Dobbs, to spare Dobbs's life or to sentence Dobbs to life imprisonment. Instead, he merely asked the jury to impose a sentence with which they could live. This failure also demonstrates deficient performance. *See, e.g., Horton,* 941 F.2d at 1462 (holding that a sentencing argument that included "[m]aybe [the defendant] ought to die, but I don't know" to be inadequate).

Another problem with Bennett's closing argument was his reading verbatim from a portion of Justice Brennan's concurring opinion in *Furman v. Georgia.* This type of "argument" did not focus the jury's attention on Dobbs's character and record or the circumstances underlying the crime. Further, Bennett offered no strategic or tactical reasons for this decision. While we find that

11

Bennett's failure to conduct a reasonable investigation into Dobbs's background for mitigating evidence to be unreasonable, we also find that Bennett's failure to investigate, combined with his deficient closing argument, shows that Dobbs has satisfied the "performance" prong enunciated in *Strickland. See Tyler v. Kemp,* 755 F.2d 741, 745-46 (11th Cir.), *cert. denied,* 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985); *King v. Strickland,* 714 F.2d 1481, 1491 (11th Cir.1983), *vacated on other grounds,* 467 U.S. 1211, 104 S.Ct. 2651, 81 L.Ed.2d 358 (1984), *adhered to on remand,* 748 F.2d 1462 (11th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985).

B. Prejudice

We turn next to a discussion of whether Dobbs has satisfied *Strickland* 's "prejudice" prong, which requires a showing that Bennett's deficient performance deprived him of "a trial whose result [was] reliable." *Horton,* 941 F.2d at 1463 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). In assessing the "prejudice" prong, this court must determine whether

> a reasonable probability [exists] that but for counsel's unprofessional errors, the result of the proceeding would have been different.... A reasonable probability is a probability sufficient to undermine confidence in the outcome ... [but] a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case.

*Jackson,* 42 F.3d at 1361 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068) (internal citations omitted).

This court has found capital defendants to have been prejudiced in past cases where their lawyer's failure to investigate resulted in omissions of mitigating evidence. *See, e.g., Jackson,* 42 F.3d at 1368-69 (concluding that prejudice arose where defendant's lawyer failed to discover and introduce mitigating evidence showing that the defendant suffered a "brutal and abusive childhood"); *Harris,* 874 F.2d at 763 (finding that defendant suffered prejudice when his lawyer's failure to investigate led to the omission of potentially mitigating evidence concerning his family,

12

scholastic, military and employment background); *Blake v. Kemp,* 758 F.2d 523, 533-34 (11th Cir.) (holding that defendant demonstrated a reasonable probability that he would have received a lower sentence but for his lawyer's failure to search out mitigating character evidence), *cert. denied,* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). The record supports the district court's factual finding that Bennett could have elicited and presented mitigating evidence showing that Dobbs experienced an "unfortunate" upbringing had he conducted a reasonable investigation into Dobbs's background.

Our analysis of the prejudice prong, however, must also take into account the aggravating circumstances associated with Dobbs's case, to determine whether "without the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different." *See Bolender v. Singletary,* 16 F.3d 1547, 1556-57 (11th Cir.) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994). The government's evidence presented the following aggravating circumstances: (1) Dobbs had been previously convicted of three nonviolent crimes; (2) Dobbs murdered Sizemore during the commission of an armed robbery; (3) Dobbs struck Sizemore in the head with his gun, and shot him after Sizemore told Dobbs to take whatever he wanted from the store and asked that he not harm him; (4) Dobbs shot at a milk delivery man after the man entered the store; and (5) Dobbs struck a 62-year-old female patron on the head with his gun, and took her purse before exiting Sizemore's store.

We find that a reasonable probability exists that Dobbs's sentence would have been different had the jury balanced the aggravating and mitigating circumstances. We note that "[m]any death penalty cases involve murders that are carefully planned, or accompanied by torture, rape or

13

kidnapping." *Jackson,* 42 F.3d at 1369. In these types of cases, this court has found that the aggravating circumstances of the crime outweigh any prejudice caused when a lawyer fails to present mitigating evidence. *See, e.g., Francis v. Dugger,* 908 F.2d 696, 703-04 (11th Cir.1990) (finding that "evidence of a deprived and abusive childhood [was] entitled to little, if any, mitigating weight," in a case concerning a deliberately planned torture murder); *Thompson,* 787 F.2d at 1453 (holding that "evidence of a difficult youth, an unsavory codefendant, and limited mental capacity would [not] have altered this jury's decision," in a case involving a rape and brutal torture murder). The aggravating circumstances surrounding Dobbs's case, while deplorable, do not rise to such a level as to overshadow the significant mitigating evidence that Dobbs's jury had no occasion to consider.

The district court concluded that Bennett's failure to investigate and present mitigating evidence at sentencing prejudiced Dobbs, finding that "a reasonable probability exist[ed] that a jury hearing this evidence would have sentenced [Dobbs] to life imprisonment, even after considering the aggravating circumstances presented by this case." We agree, and conclude that Dobbs has satisfied *Strickland* 's "prejudice" prong.

## IV. CONCLUSION

For the foregoing reasons, we find that Dobbs has satisfied the test for ineffective assistance of counsel as enunciated in *Strickland.* We affirm the district court granting of Dobbs's petition for writ of habeas corpus, and remand this case for resentencing within a reasonable time.

AFFIRMED.

14